NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| RICHARD SUNDQUIST, | : | |
| Plaintiff, | : | Civil No. 11-05364 (JAP) |
| v. | : | **OPINION** |
| LYNN A. KOVICH, et al. | : | |
| Defendants. | : | |

PISANO, District Judge:

Plaintiff Richard Sundquist filed this Complaint on September 16, 2011, alleging that his constitutional rights were violated when he was not afforded a timely civil commitment hearing in accordance with New Jersey's civil commitment statute [docket entry no. 1]. He brings this action against Defendants Lynn A. Kovitch, Assistant Commissioner and Acting Director of the Division of Mental Health Services ("DMHS"); Stacy Udijohn, the "court coordinator" at Trenton Psychiatric Hospital ("TPH"); Lawrence Rossi, M.D., the clinical director of TPH; and Teresa McQuaide, the CEO of TPH. Defendants filed this Motion for Summary Judgment on December 27, 2011 [docket entry no. 11]. The Court held oral argument on the Motion on May 22, 2012. For the reasons set forth below, summary judgment will be granted in part and denied in part.

I.     Background

The following facts are undisputed. Plaintiff Richard Sundquist was admitted to the Trenton Psychiatric Hospital ("TPH") on June 24, 2009 pursuant to an order dated May 8, 2009

1

by Judge Morley in Burlington County, New Jersey, for evaluation of his competency to stand trial on criminal charges. The order scheduled a competency hearing for August 21, 2009. Patients committed pursuant to such an order are referred to administratively as on "IST" (incompetent to stand trial) status. On August 7, 2009, Dr. Carolina E. Diao prepared a report finding Plaintiff incompetent to stand trial. This report was sent to the Court on August 12, 2009. Following the August 21 hearing, Judge Morley's law clerk called the Court Coordinator's Office at TPH, which handles all legal issues relating to patients at that facility. The clerk told Donald Newsom, the Principal Clerk Typist, that a new hearing had been scheduled for November 6, 2009, and that a report would be due two weeks prior to that date.

On October 8, 2009, however, Judge Morley entered an order dismissing Plaintiff's criminal charges, ordering that he be civilly committed pursuant to N.J.S.A. 30:4-27.20, and ordering the prosecutor's office and county adjuster to prepare certain materials for the civil commitment hearing required under that statute. This order was not sent to the Court Coordinator's Office at TPH. Apparently without notice that Plaintiff's legal status had changed, Dr. Rumiana Radic prepared the previously-ordered report on October 20, 2009, finding that the Plaintiff was now competent to stand trial. Mr. Newsom of the Court Coordinator's Office did not learn of the dismissal and civil commitment order until October 26, 2009, when he called the court to inquire about the previously-scheduled November 6 competency hearing. Defendants allege that Plaintiff's criminal attorney, Donald Ackerman, apologized to Mr. Newsom for forgetting to send a copy of the order to TPH. Mr. Newsom passed the order along to Dr. Radic and Anita Tillman, the program coordinator of the treatment team on Plaintiff's unit, so that civil commitment proceedings could commence. An Application for Involuntary Commitment and supporting Clinical Certifications were submitted to the court on November 19, 2009. The next

2

day, a temporary commitment order was entered. On December 9, 2009, a hearing was held on the need for continued commitment, and an order was entered civilly committing the Plaintiff. Plaintiff remained committed until September 1, 2010, when he was placed on Conditional Extension Pending Placement ("CEPP") status, and he was discharged on October 29, 2010.

Plaintiff instituted this action on September 16, 2011, alleging that the Defendants violated N.J.S.A. 30:4-27.10, which requires that a person involuntarily committed to a psychiatric hospital must have a civil commitment hearing within twenty days of initial inpatient admission. The Complaint's first Count alleges that this detention without a hearing for sixty-three days denied Plaintiff of liberty without due process of law, constituting a violation of his rights under the Fifth and Fourteenth Amendments of the United States Constitution, and therefore asserts a claim under 42 U.S.C. § 1983. The Second Count alleges that the Defendants subjected Plaintiff to an unreasonable seizure of his person in violation of the Fourth Amendment, and the Third Count alleges that Defendants denied Plaintiff the day in court to which he was entitled in violation of the First Amendment. The Complaint seeks a declaratory judgment that the Defendant's actions were unconstitutional, injunctive relief consisting of an order that Defendants implement a policy preventing such occurrences from happening again, monetary damages, and attorneys' fees.

## II. Motion for Summary Judgment

A court shall grant summary judgment under Rule 56 of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must first show that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986). Whether or not a fact is material is determined according to the substantive law at issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the moving party makes this showing, the burden shifts to the non-moving party to present evidence that a genuine fact issue compels a trial. *Celotex*, 477 U.S. at 324. The non-moving party must then offer admissible evidence that establishes a genuine issue of material fact, *id.*, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *Pollock v. American Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The Court shall not "weigh the evidence and determine the truth of the matter," but need determine only whether a genuine issue necessitates a trial. *Anderson*, 477 U.S. at 249. If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine issue of material fact exists, then the Court must grant summary judgment. *Big Apple BMW v. BMW of North America*, 974 F.2d 1358, 1363 (3d Cir. 1992).

### A. Eleventh Amendment Immunity

The Defendants argue first that the state agency officials may not be sued in their official capacities due to Eleventh Amendment immunity, noting that the Plaintiff does not have standing to seek injunctive relief. *See Federal Maritime Commission v. South Carolina State Ports*, 535 U.S. 743, 765 (2002) (explaining state sovereign immunity); *Will v. Michigan Dep't of State Police*, 491 U.S. 356, 365 ("[N]either a State nor its officials acting in their official capacities are 'persons' [subject to suit] under section 1983."). As Defendant Lynn Kovitch is, by Plaintiff's admission, sued only in her official capacity, the Complaint against her must be dismissed.

The Plaintiff has no standing to sue for injunctive relief, which is permitted as an exception to Eleventh Amendment immunity. *See MCI Tel Corp. v. Bell Atlantic-Penn*, 271 F.3d 491, 503 (3d Cir. 2001) (listing exceptions to Eleventh Amendment immunity). This is because he was released in 2010, and therefore there is no "ongoing violation" that would allow him to seek injunctive or declaratory relief against the Defendants in their official capacities. *Id.* He does not have standing to demand that Defendant Kovitch implement a policy affecting persons involuntarily committed in the future, nor does he have standing to demand a declaratory judgment that the Defendants' entirely past actions were unconstitutional. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 103-04 (1983) (Plaintiff must show a "real and immediate threat" of future injury to obtain prospective relief); *Brown v. Fauver*, 819 F.2d 395, 400 (3d Cir. 1987) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding prospective relief.")  Thus, the Complaint must be dismissed as to Defendant Lynn Kovitch.

The Plaintiff contends that the remaining Defendants were sued in their individual capacities, as personally responsible for the alleged violations.  Therefore, the Complaint will not be dismissed against them on the basis of Eleventh Amendment immunity.

### B. Failure to State a Claim

The Defendants argue that the Complaint fails to state a claim against all of the named Defendants for three reasons.  First, they argue because the Plaintiff was initially committed pursuant to a different New Jersey statute, N.J.S.A. 2C:4-6, as a danger to self, others or property as a result of mental illness, it was ambiguous whether or not the October 8, 2009 order triggered the twenty-day deadline of the civil commitment statute.  Second, Defendants argue that the Complaint fails to state a claim because none of the named Defendants were actually responsible for the failure to hold a civil commitment hearing within the statutorily-required twenty days

5

from Plaintiff's initial admittance. Third, the Defendants argue that the facts alleged simply do not state a claim for the violation of Plaintiff's constitutional rights.

At the outset, the Court notes that this part of Defendants' argument is based on the Motion to Dismiss standard. Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted. In deciding a Motion to Dismiss, courts must first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true. *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009). All reasonable inferences must be made in the Plaintiff's favor. *Nami v. Fauver*, 82 F.3d 63 (3d Cir. 1996); *Oshiver v. Levin, Fishbien, Sedran & Berman*, 38 F.3d 1380 (3d Cir. 1994). However, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Baraka v. McGreevey,* 481 F.3d 187, 195 (3d Cir. 2007). When assessing the sufficiency of a civil complaint, a court must distinguish factual contentions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Court rejects Defendants' assertion that the October 8, 2009 order did not clearly trigger the twenty-day hearing deadline. The Defendants have provided no legal support for their argument that the statutory protections accorded a civilly-committed person do not apply when that person has previously been committed under some other legal status. Their factual argument that the order was ambiguous is also without merit. The order clearly changes the Plaintiff's legal status to civil commitment, referring specifically to the civil commitment statute, N.J.S.A. 30:4-27.10, and further ordering the prosecutor's office to take certain actions in preparation for the hearing required by that statute.

Defendants also argue that the Complaint fails to state a claim because it was Plaintiff's criminal defense attorney, not any of the named Defendants, who bears the sole responsibility for failing to pass along the court's order, which would have set the civil commitment proceedings in motion.  However, the Defendants rely on their own factual contentions, not the pleadings, to argue for dismissal before discovery has taken place; the facts underlying this argument have yet to be developed.  The Defendants' assertion that the Plaintiff's criminal attorney forgot to transmit the relevant order to TPH does not necessarily absolve the TPH Defendants of all responsibility to be aware of and to protect the legal rights of the person in their custody.  The Plaintiff is entitled to discovery before the Court may assume that, as Defendants contend, no legal responsibility resides with any named Defendants.  *See*, *e.g.*, *Reese v. Sparks*, 760 F.2d 64 (3d Cir. 1985).

The Defendants contend that, in any event, the Complaint does not allege the specific conduct necessary to state a claim that Plaintiff's rights were violated.  *See*, *e.g.*, *Gittlemacker v. Prasse*, 428 F.2d 1, 3 (3d Cir. 1970); *Wood v. Strickland*, 420 U.S. 308 (1975).  The Complaint is based upon Plaintiff's contact with TPH, and his limited knowledge of the Hospital's administrative structure.  If, as Defendants' argue, Plaintiff intended to show that any Defendants were liable solely under a respondeat superior theory, those Defendants would be dismissed from the case.  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1948-49 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior . . . .  [A] plaintiff must plead that each Government official defendant, through the official's own actions, has violated the Constitution. . . .").  However, the Plaintiff contends that the Defendants themselves were under a direct obligation to exercise due diligence to obtain a proper court order at the time they took him into custody.  *Reed v. Gardner*, 986 F.2d 112, 1124-

7

25 (2d Cir. 1993). He also notes that omissions, as well as actions, can violate a person's constitutional rights. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Yang v. Hardin*, 37 F.3d 282 (7th Cir. 1994).

It is true that the Plaintiff must allege specific actions that violated his Constitutional rights. However, he has alleged that he was illegally detained without due process, and that the specifically-named Defendants were legally responsible for this detention. *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 267 (3d Cir. 2010). The Defendants have failed to refute these contentions, which are sufficient to state a claim that his constitutional rights were violated. Indeed, that he was detained without a hearing for sixty-three days may be all that is feasible for him to allege before discovery. He was apparently the unwitting victim of failed administrative procedures, and he has thus far had little opportunity to discover the circumstances that led to his prolonged detention.

Finally, the Defendants argue that, while a sixty-three day detention without a hearing may have been a violation of the New Jersey civil commitment statute, it is insufficient to state a claim for the violation of Plaintiff's constitutional rights. They cite *Briggs v. Arafeh*, 411 U.S. 911 (1973), for the proposition that a forty-five-day period of temporary confinement pending civil commitment is constitutional. Only forty-three days elapsed between the day that Mr. Newsom became aware of the civil commitment order, and the date of Plaintiff's final hearing on December 9, 2009. Thus, Defendants contend that Plaintiff was held without a hearing for less time than was found to be constitutional in *Briggs*. This argument is flawed for several reasons.

First, the Plaintiff was not held for forty-three days. Plaintiff was deprived of his constitutionally-protected liberty for sixty-three days before his civil commitment hearing, i.e. without due process of law. The statutory deadline for such a hearing is twenty days from initial

8

inpatient admission. When and how the Defendants learned of Plaintiff's legal status does not change these basic facts. That his detention was lawful for the first twenty days also does not operate to shorten the total amount of time that he was held with no hearing, as Defendants contend. Moreover, the Plaintiff did not get a hearing until well over twenty days after the Defendants finally learned of the civil commitment order. Mr. Newsom called the court and found out about the civil commitment order on October 26, 2009; the hearing was not held until December 9, 2009. The statutory deadline was, therefore, knowingly violated.

Second, *Briggs* does not stand for the universal proposition that persons subject to civil commitment may be held for forty-five days or less without a hearing. Rather, it summarily affirmed a decision of the District of Connecticut, upholding the Connecticut civil commitment statute's forty-five-day hearing deadline. *See Logan v. Arafeh*, 346 F. Supp. 1265 (D. Conn. 1972). The plaintiffs in that case did not claim that the state agency officials had failed to follow the required procedures, but rather mounted a facial challenge to the statute. *Id.* Further, the District Court in *Briggs* evaluated the forty-five day deadline in the context of that particular statute, including its objective of providing medical treatment and care to the committed person before the hearing. *Id.* at 1268-71. The Defendants in this case have proffered no objective that might have been served by detaining the Plaintiff without due process for sixty-three days.

### C. Qualified Immunity

Finally, the Defendants claim that they are entitled to qualified immunity because they did not violate the Plaintiff's clearly established rights. Government officials performing discretionary functions are generally "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1999).

9

Defendants argue that: 1) they did not violate Plaintiff's constitutional rights at all, and 2) that even if they did violate his rights, they are entitled to qualified immunity because the specific right at issue in this case was not clearly established, or known of by reasonable persons. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001); *Pearson v. Callahan*, 555 U.S. 223, 227 (2009).

For the reasons stated above, the Defendants have not satisfied the Court that they are entitled to summary judgment on the issue of whether the Plaintiff's sixty-three day detention with no hearing violated his constitutional rights. They have also failed to convince the Court that they are entitled to qualified immunity because the rights violated were not well-established. Liberty is perhaps the most basic of rights protected by the Constitution; reasonable persons are aware that holding a person in custody without legal authority is a constitutional violation. The Defendants in this case were state agency officials charged with implementing the statute that functions to provide due process of law for persons deprived of their liberty through civil commitment. They are not entitled to qualified immunity in this case.

### III.   Conclusion

For the foregoing reasons, the Defendants' Motion for Summary Judgment will be granted in part and denied in part. Defendant Lynn Kovitch will be granted summary judgment, as the Plaintiff is not entitled to prospective relief against her in her official capacity. All other bases for summary judgment are denied. An appropriate order follows.

 /s/ Joel A. Pisano  
JOEL A. PISANO  
United States District Judge

Dated: July 17, 2012